**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 18 2025

JEFFREY P. COLWELL
CLERK

Civil Action No. _____

(To be supplied by the court)

JAMES WOO _____, Plaintiff

v.

**Jury Trial requested:**
(please check one)
✓ Yes ____ No

STEPHANIE REDFIELD _____,

SAMUEL A. EVIG _____,

JOSEPH ROYBAL _____,

_____, Defendant(s).

(*List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.*)

---

**PRISONER COMPLAINT**

---

| **NOTICE** |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

James Woo, DOC #179463, Centennial Correctional Facility, P.O. Box 600, Canon City, CO 81215
(Name, prisoner identification number, and complete mailing address)

N/A
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____    Pretrial detainee
____    Civilly committed detainee
____    Immigration detainee
✓     Convicted and sentenced state prisoner
____    Convicted and sentenced federal prisoner
____    Other: (*Please explain*) _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Stephanie Redfield, Senior Deputy District Attorney of the Fourth Judicial District Attorney's Office
(Name, job title, and complete mailing address)

105 East Vermijo Avenue, Colorado Springs, CO 80903

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✓ Yes ____ No (*check one*). Briefly explain:

Defendant Redfield is the prosecutor in Plaintiff's criminal case who is detaining Plaintiff's property based on unconstitutional grounds.

Defendant 1 is being sued in his/(her) ____ individual and/or ✓ official capacity.

Defendant 2: _Samuel A. Evig, District Court Judge at the El Paso County District Court_
(Name, job title, and complete mailing address)

_270 South Tejon Street, Colorado Springs, CO 80903_

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✓ Yes ___ No (*check one*). Briefly explain:

_Defendant Evig is the judge presiding over Plaintiff's criminal case, who ordered the effective forfeiture and detention of Plaintiff's property based on unconstitutional grounds._

Defendant 2 is being sued in (his)/her ___ individual and/or ✓ official capacity.

Defendant 3: _Joseph Roybal, Sheriff of the El Paso County Sheriff's Office_
(Name, job title, and complete mailing address)

_27 East Vermijo Avenue, Colorado Springs, CO 80903_

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? ✓ Yes ___ No (*check one*). Briefly explain:

_Defendant Roybal is the Sheriff in possession of Plaintiff's property._

Defendant 3 is being sued in (his)/her ___ individual and/or ✓ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

✓    State/Local Official (42 U.S.C. § 1983)

___    Federal Official

As to the federal official, are you seeking:

___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

___    Other: (*please identify*) _____

3

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: <u>Deprivation of Property Pursuant to Unconstitutional State Procedure</u>

Claim one is asserted against these Defendant(s):

Stephanie Redfield, Samuel A. Evig, and Joseph Roybal.

Supporting facts:

1.    This claim alleges that Colorado's remedy for the return of property seized by law enforcement in state criminal cases is constitutionally inadequate, resulting in the erroneous and wrongful deprivation of property seized from Plaintiff James Woo ("Woo").

2.    On April 22, 2016, law enforcement arrested Woo at the Seattle Tacoma International Airport on suspicion of a homicide in Colorado, seizing all property that Woo carried in his luggage and backpack. In addition, officers seized numerous items from Woo's San Francisco residence on April 22, 2016 and May 1, 2016. Upon receipt at the El Paso County Sheriff's Office ("EPSO"), detectives photographed and logged all items into evidence.

3.    On February 6, 2018, Woo was convicted of first-degree murder of J.T. and sentenced to life without parole.[1] *People v. Takchuan Woo*, 2025 COA 77, ¶ 5.

---

[1] J.T. and Woo met on eHarmony in January 2013, when J.T. was 30 years old. They first met in person the next month in El Paso, Texas, after which Woo returned to San Francisco to learn that J.T. had booked a flight to join him on his Hawaii surf trip in March before he had even booked his flight. A three-year affair ensued, with up to a dozen break-ups. J.T. divorced her husband by July 2014 (Case No. 2014DR030056 (El Paso County)), whereas Woo remained with his wife.

<u>See</u> additional pages attached (pp 8-26).

4

**E.    PREVIOUS LAWSUITS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?  ✓ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):          El Paso County Sheriff's Office and Fourth Judicial District Attorney's Office.

Docket number and court:         19CV103, District Court, El Paso County, Colorado.

Claims raised:                             Replevin claim for property seized by law enforcement.

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)    Dismissed with prejudice.

Reasons for dismissal, if dismissed:    Claim barred by the Colorado Governmental Immunity Act ("CGIA").

Result on appeal, if appealed:          Affirmed on other grounds Woo v. El Paso Cty. Sheriff's Office, 490 P.3d 884, 886 (Colo. App. 2020), aff'd on other grounds 2022 CO 56, ¶¶ 5, 53, reh'g denied, 2023 Colo. LEXIS 12 (Colo. Jan. 9, 2023), cert. denied, 2023 WL 3440700 (U.S. May 15, 2023).

See additional page attached (p 7).

**F.    ADMINISTRATIVE REMEDIES**

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions.  See 42 U.S.C. § 1997e(a).  Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

              ___ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

              ___ Yes ___ No (*check one*)

Inapplicable because this action does not concern prison conditions.

**G.    REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

(A)    A declaratory judgment that:

(i) The Fifth Prong in <u>Woo v. El Paso Cnty. Sheriff's Off.</u>, 2022 CO 56, ¶ 46 is unconstitutional under the Freedom of Speech and Due Process Clauses of the First and Fourteenth Amendments;

(ii) Colorado's remedy for return of property seized by law enforcement in criminal cases is unconstitutional under the Due Process Clause to the extent that it does not require a hearing before final deprivation of property (<u>Id.</u> at ¶ 48) and allows the state to retain property indefinitely after trial without producing evidence establishing a nexus between the property and criminal activity (<u>People v. Takchvan Woo</u>, 2025 COA 77, ¶ 37);

(iii) Defendants Eyig and Redfield may not invoke or apply the Fifth Prong to the forfeiture of Plaintiff's property because it would violate the Due Process, Double Jeopardy, Excessive Fines, and Freedom of Speech Clauses;

<u>See</u> additional page attached (p 27)

**H.    PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

December 11, 2025
(Date)

(Revised November 2022)

E.    PREVIOUS LAWSUITS

Names of defendants:  Jose Angel Baez, Michelle Medina, and Richard Bednarski.

Docket number and court: 19CV227, District Court, El Paso County, Colorado.

Claims raised:        Fraud, breach of contract, breach of fiduciary duty, professional negligence, negligent misrepresentation, unjust enrichment, replevin.

Disposition:          Dismissed with prejudice.

Reasons for dismissal: Failure to file certificate of review as to Bednarski on March 10, 2020; Lack of personal jurisdiction for invalid service of process as to Baez and Medina on February 19, 2021. Upon remand after reversal in part, dismissed for failure to file certificate of review as to all except replevin claim against Baez and Medina on October 21, 2024; replevin claim against all defendants dismissed based on issue preclusion on February 14, 2025.

Result on appeal:     Reversed and remanded as to Baez and Medina; replevin claim dismissal reversed and remanded as to Bednarski; dismissal of all other claims affirmed as to Bednarski. Woo v. Baez, 2022 COA 113, ¶¶ 2, 46, reh'g denied, 2022 Colo. App. LEXIS 1652 (Colo. App. Nov. 3, 2022), cert. denied, 2023 WL 3587464 (Colo. May 22, 2023), cert. denied, 2024 WL 72260 (U.S. Jan. 8, 2024). Second appeal pending in Woo v. Baez et al., No. 25CA615 (Colo. App. 2025).

Names of defendants:  Moses Stancil, Adrienne Sanchez, Stephanie Sandoval, Officer De La Cruz, Jared Polis, Philip Weiser, Lee Puga, Terri Piccioni, Case Manager Long, Brennan Edwards, Myisha Barr, Lieutenant Duran, Doe 1, Doe 2, Doe 3.

Claims raised:        (1) Deprivation of Property without Due Process Pursuant to Established Procedure, (2) Unconstitutional State Statute As-Applied, (3) Deprivation of Legal Case Materials and Retaliation, (4) Frequent Arbitrary Relocations and RH Placements without Disciplinary Charge, (5) Willful and Wanton Deprivation of Property, and (6) Harassing and Video-Recorded Strip Searches.

Disposition:          Pending. Claim 6 severed to Woo v. Stancil et al., No. 25-CV-02932-NYW-SBP.

Docket number and court: 23-CV-03084-NYW-SBP, United States District Court, District of Colorado.

Reasons for dismissal: N/A

Result on appeal:     N/A

7

D.    STATEMENT OF CLAIMS

4.    Among the property seized from Woo are numerous computer hard drives containing Woo's entire life's work and records dating back to the 1990s, with no connection to the criminal case. The vast majority of the devices' terabytes of data predate Woo's first encounter with J.T., encompassing all of his financial documents, digital purchases, proof of ownership to other property, intellectual work product (such as software he coded throughout his entire career, music he composed in scores or recordings, documents he drafted, etc.), family and travel photos and documentations, recordings of his ex-wife's music performances, emails and other electronic communications and contacts since the 1990s, legal documents, etc.[2]

5.    The state's computer forensics lab preserved "[a] forensic image of each hard drive" (Discovery, p 030332),[3] with "[a] Master Copy of the images contained on four backup tapes" (id. at 030335). In addition to these backups preserving every bit of Woo's data in perpetuity, the lab then consolidated all extracted data into a six-terabyte (6TB) discovery hard drive and provided "three working copies" to lead Detective Mackey ("one for [People], one for Defense and one for EPSO"). Id. at 030332, 030335, 010738-39.[4] Woo's other devices were similarly preserved. Id. at 030337-40, 010818-22 (extracting items 40-RSH, 46-RSH, 64-RSH, 73-RSH, and 7SF). Thus, the state preserved all data in Woo's devices for evidentiary purpose.

6.    People and Defense did not move to admit a single file in any of Woo's hard

---

[2] Each of Woo's hard drives is not a single property item, but a container of tens to hundreds of thousands of discrete property items in the form of computer files; he has property interest in each digital file. See, e.g., People v. Seymour, 2023 CO 53, ¶¶ 33-34, 536 P.3d 1260.

[3] "Discovery" refers to the bates-stamped discovery reports in Woo's criminal case (People v. Woo, No. 16CR2069 (El Paso County)), provided by the prosecution (the "People") and EPSO.

[4] Data from J.T.'s devices were subsequently added to these 6TB discovery hard drives.

drives at trial. Rather, six days before trial, People moved for their total exclusion:

> The court is aware that there are many hard drives, thumb drives, mobile storage devices, and camera downloads in this case. The information on these drives go back to approximately the year 2000. That is long before the defendant and victim ever met. Certainly, any information on these devices that predate the defendant and the victim meeting would be irrelevant and inadmissible. Even the information on these devices that was kept during the time of the relationship is not relevant to any fact of consequence in this trial. Much of the information would also be hearsay if offered by the defense.

Case No. 16CR2069, Motion in Limine to Exclude Inadmissible Evidence, π 3 (filed January 16, 2018). Further, People moved to exclude all "text exchanges, [] e-mail exchanges and [] phone messages" between J.T. and Woo. Id. at π 5. "The People recognize that the vast majority of this evidence will not be relevant to the case at hand and have elected to conduct reasonable searches of this data and leave the rest alone." No. 16CR2069, People's Response to Renewed Motion to Continue Trial Due to Discovery Violations and Amended Renewed Motion to Continue Trial Due to Discovery Violations, p 2 (filed December 18, 2017). Thus, People conceded that all of Woo's data lacked evidentiary value.

7.    A month before trial, People filed a motion for a protective order of intimate images of J.T. that they provided Defense explicitly on a discovery "disc of photos" (discovery discs 90-91), based on their false allegation that Woo purportedly threatened to disseminate the images.[5] No. 16CR2069, People's Motion Protect [sic] the Release of Intimate Photos & Videos

---

[5] People alleged no such threat in their exhaustive C.R.E. 404(b) motion pretrial, thus revealing the lack of any substantiating evidence. In her sole police complaint on April 18, 2016, J.T. alleged to Deputy Kelemen that she believed Woo posted "'bad' images with her clothes missing and her holding a glass of wine and a cigarette" on FaceBook. Discovery, p 100100. J.T. "stated the photograph [was] no longer available and she ha[d] no proof that Mr. Woo had in fact posted the image," later clarifying when pressed that "it was not a naked photograph" and did not depict "her breast or genitalia". Id. J.T.'s sister subsequently provided screenshots of these April 16, 2016 FaceBook posts to Detective Mackey (Id. at 180073-74 (two screenshot photos)), revealing two

of the Victim, Deny the Use of These Images at Trial and Require the Defense to Return or Destroy Explicit Images at the End of Trial (filed December 18, 2017). Local Defense Counsel Richard Bednarski conceded to the motion at a December 22, 2017 hearing without consulting with Woo. No. 16CR2069, TR 12/22/17, pp 4:21-5:25.

8.    In response to Woo's repeated post-trial demands for his client file, Bednarski filed a motion requesting permission to release the discovery hard drives in his possession to Woo. No. 16CR2069, Motion to Allow Release of Hard Drives to James Woo's Family (filed May 22, 2018). Bednarski did so against Woo's objection, effectively informing the court that the drives contained intimate images of J.T. and taking it upon himself to expand the scope of the protective order (to which he alone conceded) to the drives against his own client's interest. Judge Jann Dubois, who presided over Woo's criminal case from its commencement through trial, denied the motion and required Woo to "state specifically what items are wanted from the hard drive[ and] why they are being requested". No. 16CR2069, Minute Order (issued May 25, 2018).

9.    On April 18, 2019, Woo filed a replevin complaint for the return of his property, on the basis that the overwhelming majority of it was never used at trial and had no evidentiary value. See supra at p 5. The district court dismissed the case with prejudice on July 3, 2019, based on alleged failure to file notice of claim under the CGIA. Woo v. El Paso Cnty. Sheriff's Off., 2022 CO 56, ¶ 12, 528 P.3d 899. [6]

---

non-sexually explicit photos that Detective Mackey described as J.T. (1) "appearing to snort a white substance" and (2) "drinking a bottle of wine while smoking a cigarette" (Id. at 010674). Contrary to J.T.'s initial allegation, her clothes are not missing. When Deputy Kelemen asked J.T. if Woo had threatened her, J.T. expressly "stated Mr. Woo had not made any threats". Id. at 100100.

[6] The facts in Woo, 2022 CO 56 at ¶¶ 6-8 contain errors: (1) Woo's trial attorney never filed any motion for return of property (see Paragraph 8); (2) People's referenced response was unrelated to any such motion, but was in response to Woo's extrajudicial letter; and (3) it was only established via arguably hearsay trial testimony that J.T. told her neighbor she and Woo had broken up; various courts' embellishment in the opinions cited herein — that J.T. ended her affair with Woo — is a projection of a stereotype and motive that has no evidentiary support and cannot be established at a trial. Even People and EPSO detectives do not know why, when, or how the purported breakup occurred.

10.    On September 18, 2019, Woo filed his first motion for return of property, which Judge Dubois declined to address based on lack of jurisdiction pending the ongoing appeal of the criminal conviction. No. 16CR2069, Minute Order (issued February 6, 2020). In the same order, Judge Dubois reiterated, with respect to Woo's request for materials in the discovery hard drives, that he must "specify what items are wanted from the hard drive [and] why they are being requested". Id. (converted to lowercase).

11.    The Colorado Court of Appeals affirmed the dismissal of Woo's replevin claim on September 10, 2020, on other ground that it was barred by the CGIA because replevin in detinet was an action which lay or could lie in tort. Woo, 2022 CO 56 at ¶ 13.

12.    On August 16, 2021, the Colorado Supreme Court granted Woo's petition for writ of certiorari, which argued that: (1) there was a split in Colorado Court of Appeals authorities as to whether a criminal court had post-sentence jurisdiction to address a motion for return of property; and (2) Woo could be deprived of property without due process since the CGIA barred his replevin claim and the criminal court could assert lack of jurisdiction to address a motion for return of property. In his Opening Brief, Woo requested to proceed with the replevin claim rather than to resolve the split. He contended, inter alia, that a motion for return of property would not satisfy due process because a criminal court had discretion to indefinitely defer a hearing and "relieve [People] of the burden to prove by a preponderance of the evidence a connection between Woo's property and criminal activity, thus circumventing the whole purpose of a property hearing and effectively depriving Woo of his property without due process." Woo v. El Paso Cty. Sheriff's Office et al., No. 20SC865, Opening Brief of Petitioner, pp 8, 29 (filed April 11, 2022). As detailed below, this is precisely what occurred.

13.    After more than a year without response from Judge Dubois as to Woo's follow-up request for his files from the discovery hard drives, Defendant Samuel A. Evig

("Judge Evig") replaced her in late 2021. On December 6, 2021, Judge Evig issued an order which: (1) vacated Judge Dubois' orders allowing Woo to request specific files from the discovery hard drives (No. 16CR2069, Order Deferring Ruling on Defendant's Motion for Return of Property, Denying Defendant's Motion for Discovery, and Denying Motion to Modify Protective Order, pp 3 & 6 ¶4 (issued December 6, 2021)); (2) reserved ruling on Woo's September 18, 2019 motion for return of property due to the pending certiorari review (id. at 3-6); (3) denied Woo's request for materials from the discovery hard drives altogether (id. at 6-8); and (4) denied Woo's motion to lift the protective order (filed for the purpose of forcing People to substantiate with evidence their false assertion that Woo threatened to disseminate intimate images of J.T., and to which People did not respond substantively) (id. at 8-9). Thus, whereas Judge Dubois at least provided an illusory means for Woo to request a copy of his digital property in discovery from the discovery hard drives, Judge Evig foreclosed such option altogether.

    14.    On December 12, 2022, the Colorado Supreme Court affirmed the dismissal of Woo's replevin claim after resolving the aforementioned split in Court of Appeals authorities, holding that: (1) criminal courts had ancillary jurisdiction to address post-sentence motions for return of property at various junctures; and (2) the remedy was constitutionally adequate. Woo, 2022 CO 56 at ¶¶ 4-5, 53. In addition, the Court held:

> If a defendant makes the requisite prima facie showing [of ownership of property seized by law enforcement], then the burden shifts to the prosecution to demonstrate by a preponderance of the evidence that: (1) the requested property is the fruit of illegal activity or is otherwise connected to criminal activity; (2) the defendant is not the owner of the requested property or a person entitled to possess it; (3) it would be unlawful for the defendant to possess the requested property; (4) the prosecution may need the requested property later, including after a direct appeal, during postconviction proceedings, or following an appeal from those proceedings; or (5) based on any relevant factors, including the type of case and the nature of the requested property, it would be inappropriate to grant the defendant's motion [(the "Fifth Prong")].

<u>Id.</u> at ¶ 46 (emphasis added).

15.    The next day, Judge Evig, sua sponte, imposed a 42-day deadline for Woo's appointed postconviction counsel to file a motion for return of property. No. 16CR2069, Order Requiring Defense Response and Establishing Briefing Schedule (issued December 13, 2022). Against Woo's instruction not to file such motion pending his petition for writ of certiorari in the U.S. Supreme Court, counsel filed the motion on January 24, 2023. Counsel omitted the majority of Woo's seized property due to failure to research what was seized, made legally erroneous concession, and relinquished property without consultation with Woo. Woo discharged postconviction counsel at a hearing on April 11, 2023 and withdrew her motion.[7]

16.    After the U.S. Supreme Court denied his petition, Woo filed a new motion for return of property, seeking the return of 55 sets of items as labeled in evidence. No. 16CR2069, Defendant's Motion for Return of Property Seized by Law Enforcement (filed July 12, 2023). These items included diamond jewelry, cash, documents, a backpack and a luggage full of items, computer tower, iPad, iPhones, camcorder, thumb drives, hard drives, etc. Plaintiff's Exhibit 1.

17.    Woo contended that the state had no basis to retain his digital devices because:

---

[7] Assessing based on the December 6, 2021 and sua sponte orders that Judge Evig could hardly wait to apply the Fifth Prong as a new recipe to wrongfully forfeit Woo's hard drives, Woo indicated, up to six months before filing his property motion, that: (1) he "anticipated imminent injustice and abuse of power" (No. 16CR2069, Combined Motion to Defer Deadline to File Motion for Return of Property and to Proceed Pro Se in Property Matter, ¶¶ 3-8 (filed January 17, 2023)); (2) "to force Woo to proceed with Counsel's motion… is to [] facilitate the wrongful permanent deprivation of his hard drives with Counsel's assistance"…"[T]he only logical purpose of binding Woo to Counsel's improper concession… is to foreclose his ability to litigate his own property request properly" (16CR2069, Motion to Appear Remotely and to Hold the Court's Order for Counsel's Updated Pleading for Return of Property in Abeyance Pending Disposition of Motion to Terminate, ¶¶ 11-12 (filed March 27, 2023)); and (3) the December 6, 2021 order "made it clear how the Court will rule with respect to Woo's seized personal hard drives in the coming months (No. 16CR2069, Notice of Change of Address, Motion for Leave to File Reply, and Status Update, ¶ 4 (filed August 11, 2023).

(1) People expressly conceded to their lack of evidentiary value by moving for their total exclusion (id. at π 26); (2) some devices contained nothing relevant to J.T. (id. at π 27); (3) some devices were illegally searched (id. at π 36 n.15); and (4) the state fully preserved all data (id. at ππ 29-30). Preemptively acknowledging that some devices contained lawful intimate images of J.T. consensually taken during his three-year affair with her, Woo contended that: (1) the images were irrelevant to the case, lawfully owned, and protected by the First Amendment; (2) the images were not contraband or subject to statutory forfeiture; and (3) he would voluntarily consent to the exclusion of all images of J.T., intimate or otherwise. Id. at ππ 31-37.

18.    As for the remaining items, Woo contended that: (1) People must demonstrate with evidence a specific nexus between each item and the murder to continue their retention; and (2) the state's indefinite retention of property never even moved for trial admission constituted a de facto forfeiture without due process. Id. at ππ 14, 18-24.

19.    In a motion for extension of time to respond, People indicated that the case would "be reassigned to an attorney who [would] not have any familiarity with the details of this case." No. 16CR2069, People's Request for More Time to File a Response, π 2 (filed August 1, 2023).

20.    Defendant Stephanie Redfield ("Redfield") was the newly assigned prosecutor. Without submitting any evidence or alleging that any item was used at trial, she argued that: (1) intimate images of J.T. rendered all electronic devices "inappropriate" to return under the Fifth Prong (No. 16CR2069, People's Response to Defendant's Motion for Release of Properties and Discovery, pp 2, 6-7)(filed September 9, 2023); and (2) all opposed items might be needed in the event of a retrial, without any specificity as to why each item was not used at trial (id. at 2-3, 7). Redfield objected to the release of every item with monetary or personal value

14

to Woo, raising no objection only as to some items of little to no value.[8]

21.    In reply, Woo: (1) contended that the Fifth Prong violated the separation of powers and was unconstitutionally vague and overbroad (No. 16CR2069, Reply to People's Response to Defendant's Motion for Return of Property Seized by Law Enforcement, ¶¶ 11-12 (filed November 20, 2023)); (2) contended that Redfield failed to submit evidence to substantiate any of her assertions (id. at ¶ 5 & pp 8-15); (3) contended that Redfield's objections were not for legitimate purposes, but to maliciously inflict property deprivation (Id.); and (4) disputed many of Redfield's assertions, including which devices contained intimate images of J.T. (id. at Exhibit C). Woo requested an evidentiary hearing and moved to subpoena witnesses.

22.    Judge Evig: (1) invoked the Fifth Prong to forfeit five hard drives, a camcorder, a thumb drive, and two SD cards (47-RSH, 48-RSH, 49-RSH, 50-RSH, 51-RSH, 52-RSH, and 73-RSH) (labeled the "Image Devices" in Woo, 2025 COA 77 at ¶ 23), on the basis that alleged intimate images of J.T. rendered them "inappropriate" to return (No. 16CR2069, Order Re: Defendant's Motion for Release of Properties and Discovery, pp 11-13, 6-7 (issued December 22, 2023)); (2) largely denied the other opposed items on the basis that they might be needed in the event of retrial (id. at 5-6, 7-14); (3) granted the release of the items to which Redfield did not object or objected without any comment; and (4) did not address any of Woo's constitutional arguments. His rulings were largely predicated upon the rejection of Woo's

---

[8] Redfield also argued that the protective order somehow barred the release of Woo's devices. Woo contended that a protective order issued under Colo. Crim. P. 16(III)(d) only applied to discovery disclosure and was inapplicable to his property. Judge Evig's ruling did not reference the protective order, thus suggesting he was cognizant that Rule 16 could not extinguish a property interest. In his reply and a separate motion, Woo rebuked Redfield's efforts to falsely project a nonexistent sexual component to the murder case in her response — something no trial prosecutor or detective familiar with the case had ever even implied. Woo accused Redfield of libel and defamation, and requested court admonishment.

factual assertions with citations to defective reports, and the acceptance of Redfield's unsubstantiated assertions as true. He denied Woo's request for a hearing and to subpoena witnesses. Id. at 14. See Plaintiff's Exhibit 1.[9]

23.    On appeal, Woo contended that: (1) the Fifth Prong was unconstitutional; (2) the district court erred by denying an evidentiary hearing and accepting no evidence, and that the indefinite retention of his property constituted a de facto forfeiture; and (3) the forfeiture of his digital property violated his substantive due process and Eighth Amendment rights. People v. Woo, No. 24CA268 (Colo. App. 2024), Opening Brief of Defendant-Appellant, pp 4-6, 11-29 (filed June 24, 2024).

24.    On September 11, 2025, the Colorado Court of Appeals issued its opinion: (1) rejecting Woo's constitutional challenge without addressing its merits (Woo, 2025 COA 77 at ¶ 35); (2) reversing and remanding as to the Image Devices and 66-RSH, but affirming as to the other denied items (id, at ¶¶ 26-42); and (3) rejecting Woo's substantive due process and Eighth Amendment arguments on the basis that it already reversed as to the Image Devices and 66-RSH (id. at ¶ 43).

25.    Though People bear the burden of proof "by a preponderance of the evidence", regardless which of the five prongs they invoke for property retention under Woo, 2022 CO 56 at ¶ 46, the Court of Appeals apparently holds, with respect to the fourth prong, that People need not produce substantiating evidence to satisfy their burden where they assert that

---

[9] None of the property granted has been released. With no family left in the United States, Woo filed "Defendant's Motion to Personally Inventory and Mail Released Property Overseas" on January 22, 2024, which Judge Evig denied on February 7, 2024. Judge Evig then declined to address further motions on the matter due to the appeal of the December 22, 2023 property order. Woo anticipates that Defendants will exploit his indigency and lack of a local contact to effectively forfeit all property designated for return.

property may be needed in the event of retrial. <u>Woo</u>, 2025 COA 77 at ¶¶ 36-37.[10]

26.    Woo submitted a timely petition for writ of certiorari on November 25, 2025, which remains pending as of the date of this Complaint in <u>Woo v. People</u>, No. 25SC663 (Colo. 2025). Therein, Woo contends that: (1) the Fifth Prong violates the separation of powers and is unconstitutionally vague and overbroad; (2) the Court of Appeals erred in affirming the district court's denial of the return of property never used at trial based on unsubstantiated assertions that all items may be needed in the event of a retrial; (3) such indefinite retention of property constitutes a de facto forfeiture without due process; and (4) the district court erred by denying an evidentiary hearing, despite numerous factual disputes.

27.    Thus, in this seven-years and ongoing ordeal, People and the criminal court have used their prosecutorial and judicial powers to strip Woo of his entire life's innocuous work and records that: (1) have no connection to the murder of J.T. or any other crime; (2) are fully preserved by the state; (3) are not <u>per se</u> or derivative contraband; (3) are not subject to any forfeiture statute; and (4) are lawfully owned; <u>i.e.</u>, they have abused their prosecutorial and judicial powers to commit an effective theft of Woo's life's work and records as additional retribution.[11]

---

[10] The speculative and remote possibility of retrial (<u>see id.</u> at ¶ 37) does not constitute <u>evidence</u> establishing a nexus between property items never used at trial and the murder of J.T.

[11] It is noteworthy that, after Woo discharged postconviction counsel and elected to proceed <u>pro se</u> in his pending Colo. Crim. P. 35(c) petition (filed July 13, 2022), People provided him with a copy of discovery discs (excluding any discovery hard drive material), which inadvertently contained discs 90-91 — the very discs with intimate images of J.T. expressly referenced in People's motion for protective order. Woo <u>disclosed</u> the provision of these discs (No. 16CR2069, Motion for Reconsideration of Court Order Resolving Defendant's Motion for Release of Case Materials, ¶ 28 (filed August 11, 2023)), after which Redfield did not file a response or take any action to recall them. This reveals that People have no actual concern about the protection of the intimate images of J.T. and have only been <u>weaponizing</u> them for the ulterior malicious agenda to deprive Woo of his life's work and records and access to the discovery hard drives.

28.    Woo has been deprived of his digital property for nearly <u>ten years.</u> In time, Defendants will have succeeded in the effective forfeiture of all of Woo's property, since there will be no one alive remaining to accept any of it.

29.    The Court of Appeals' partial reversal and remand as to the Image Devices and 66-RSH was based merely on lack of evidence as to whether the devices contained intimate images of J.T. <u>Woo,</u> 2025 COA 77 at ππ 28-33, 38-42. The Court did not address any of the more important legal questions, such as whether the Fifth Prong is unconstitutional, whether it is unconstitutional to effect the forfeiture of non-contraband images of J.T. without any applicable statute, and, most importantly, whether the arbitrary forfeiture of terabytes of Woo's other innocuous digital files from decades before he even met J.T. — despite his willingness to exclude all images of her — is unconstitutional, if not plainly authoritarian. The question on remand is akin to asking whether a subject's file cabinets contain photos of his neighbors playing with their children, and should therefore be forfeited in their entirety; it is based upon an irrational leap that turns a blind eye to the more important legal question of whether such photos are unlawful and whether any existing law provides for the forfeiture of the entire file cabinets based on such photos in the first place.

30.    Judge Evig has demonstrated that he would forfeit Woo's entire life's innocuous work and records, without so much as a hearing, even where People do not <u>allege</u> that a given device contains intimate images of J.T. <u>See Id.</u> at ππ 31-32. It is clear to Woo from the above history of rulings that Judge Evig has a malicious agenda to strip him of his life's work and records. Judge Evig will undoubtedly apply the Fifth Prong again on remand for any device that contains a single intimate image of J.T. Thus, there is a continuing threat of deprivation of property without due process as long as the Fifth Prong

is in place. "'[A] plaintiff challenging the constitutionality of a state statute has a sufficiently adverse legal interest to a state enforcement officer sued in his representative capacity to create a substantial controversy when... the plaintiff shows an appreciable threat of injury flowing directly from the statute.' Wilson v. Stocker, 819 F.2d 943, 947 (10th Cir. 1987)." Tarrant Reg'l Water Dist. v. Sevenoaks, 545 F.3d 906, 910 (10th Cir. 2008).

31.    "[W]e recognized in Freeman v. Department of Corrections, that the existence of a state-court remedy does not preclude a prisoner from pleading that the remedy is nonetheless inadequate. 949 F.2d 360, 362 (10th Cir. 1991)." Johnson v. Whitney, 723 F. Appx. 587, 593 (10th Cir. 2018). "'[I]f in fact the state remedy was constitutionally insufficient, the appellant may have a cause of action under section 1983 for the confiscation of his property.' [Freeman, 949 F.2d] at 362." Id. at 593-94. Further, the property deprivation here is not "[a]n unauthorized intentional deprivation of property" (Id. at 593) for purposes of Hudson v. Palmer, 468 U.S. 517, 533 (1984), but one pursuant to an established state procedure. "Hudson held that a post-deprivation remedy does not satisfy due process 'where the property deprivation is effected pursuant to an established state procedure.' 468 U.S. at 534." Id. at 593.

I.    The Fifth Prong and application thereof violate procedural due process.

32.    Vagueness: The Vagueness doctrine "requires the invalidation of laws that are impermissibly vague. A... punishment fails to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" FCC v. Fox TV Stations, Inc., 567 U.S. 239, 253 (2012) (quoting United States v. Williams, 553 U.S. 285, 304 (2008)).

33.    The Fifth Prong is unconstitutionally vague (and overbroad) because it operates as a forfeiture mechanism at the whims of what criminal court judges consider

"inappropriate" to return, with no fair notice of what is prohibited. It is so standardless that it lends itself to arbitrary and discriminatory enforcement. It allows criminal courts to forfeit any property — whether or not implicating the First Amendment — that the court considers "inappropriate" to return, "based on <u>any relevant factors</u>, including the type of case and the nature of the requested property". <u>Woo</u>, 2022 CO 56 at ¶ 46 (emphasis added). Without guidance as to the meaning of "relevant factors", "type of case", or "nature" of property, a criminal court can invoke the Fifth Prong to forfeit any <u>lawful</u> property for any arbitrary reason as additional retribution.

34.    <u>Forfeiture without applicable statute</u>: The Fifth Prong authorizes criminal courts to forfeit any lawful property without statutory support. Only the first four prongs under <u>Woo</u>, 2022 CO 56 at ¶ 46 are consistent with federal authorities governing return of property seized from criminal defendants; the Fifth Prong has no federal counterpart:

> According to federal authority, a court may refuse to return seized property no longer needed for evidence only if (1) the defendant is not the rightful owner; (2) the property is contraband; or (3) the property is subject to forfeiture pursuant to statute. <u>See, e.g.</u>, <u>United States v. Farrell</u>, 606 F.2d 1341, 1347 (D.C. Cir. 1979); <u>United States v. Wright</u>, 610 F.2d 930, 939 (D.C. Cir. 1979); <u>United States v. Wilson</u>, 540 F.2d 1100, 1101 (D.C. Cir. 1976); <u>United States v. Brant</u>, 684 F. Supp. 421, 423 (M.D.N.C. 1988).

<u>State v. Alaway</u>, 828 P.2d 591, 592 (Wash. Ct. App. 1992). <u>See also id.</u> at 593-94 (collecting cases and scholarly citations for its finding that "[e]very jurisdiction that has considered the question has held that the power to order forfeiture is purely statutory", and, "since colonial times, forfeiture in this country has existed only by virtue of statute.").

35.    "[F]orfeiture of property... cannot be maintained unless authorized by an applicable statute." <u>United States v. Lane Motor Co.</u>, 199 F.2d 495, 496-97 (10th Cir. 1952) (citation omitted). "Because a property interest in derivative contraband is not extinguished automatically if the item is put to unlawful use, the forfeiture of such an item is

permitted only as authorized by statute, *Farrell* [606 F.2d at 1343], and such forfeitures are subject to scrutiny for compliance with the safeguards of procedural due process." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1212 n.13 (10th Cir. 2001)(quotation omitted) (brackets in original). *See also id.* at 1213 ("*cf. Lowther v. United States*, 480 F.2d 1031, 1033-34 (10th Cir. 1973)(finding that the government could not, without commencing forfeiture proceedings, retain and destroy evidence which was not illegal *per se*[)]"); *Farrell*, 606 F.2d at 1350 n.24 ("Those who believe that criminals should lose all property that is used in connection with crime must go to the legislatures, not the courts.").[12] The forfeiture of Woo's property without any applicable forfeiture statute violates due process.

36.    *No fair warning in retroactive application*: "A judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, [] where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' [*Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)]." *Rogers v. Tennessee*, 532 U.S. 451, 461 (2001). "Fundamental due process prohibits the punishment of conduct that cannot fairly be said to have been criminal at the time the conduct occurred." *Id.* at 466. The retroactive application of the Fifth Prong from 2022 — a novel forfeiture case law with no precedent — to Woo's property seized in 2016 violates due process because Woo had no fair warning prior to his arrest on April 22, 2016 that his non-contraband, lawfully-owned devices with no connection to any crime and not subject to any forfeiture statute could be forfeited at the whims of what a judge considers "inappropriate" to return after December 12, 2022 — here, based on non-contraband, lawfully-owned intimate images of J.T. If given fair warning, Woo would have removed such images from his devices.

---

12 Here, Woo's devices do not even constitute derivative contraband; they have no connection to the murder of J.T. or any other crime.

37.   Prior to *Woo*, 2022 CO 56, the longstanding relevant controlling case law in Colorado was that after a defendant makes a prima facie showing of ownership, "[t]he burden then shifts to the prosecution to prove by a preponderance of the evidence that the items were the fruit of an illegal activity or that a connection exists between those items and criminal activity." *Woo v. El Paso Cty. Sheriff's Office*, 490 P.3d 884, 889 (Colo. App. 2020) (citing *People v. Fordyce*, 705 P.2d 8, 9 (Colo. App. 1985)). *See also People v. Strock*, 931 P.2d 538, 539 (Colo. App. 1996) (same). Woo's devices would not have been subject to forfeiture under this prior standard since they were not *per se* or derivative contraband and had no connection to any criminal activity.

38.   The Fifth Prong must not be given retroactive effect because it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, representing "a marked and unpredictable departure from prior precedent" and "an exercise of the sort of unfair and arbitrary judicial action against which the Due Process Clause aims to protect." *Rogers*, 532 U.S. at 467.

39.   *No right to hearing*: Colorado's remedy for return of property violates procedural due process because no hearing is required before final deprivation of property. *See Woo*, 2022 CO 56 at ¶ 48 ("In its discretion, the trial court may hold a hearing (evidentiary or non-evidentiary) before resolving a motion for return of property."). *See also id.* at ¶ 52 ("To be fair, Woo correctly remarks that there is no guarantee the trial court in his criminal case will hold a hearing. But nowhere in [*City & County of Denver v.*] *Desert Truck Sales[, Inc.*, 837 P.2d 759 (Colo. 1992)] did we say that a hearing is required."). However, *see Woo*, 490 P.3d at 888 (In *Desert Truck Sales*, "[t]he Supreme Court … reason[ed] that the plaintiff had a statutory right to a post-seizure hearing …, and that the hearing was mandatory.

[Desert Truck Sales, 837 P.2d] at 767-68 (citing § 42-5-110, C.R.S. 2019). The court concluded that this procedure adequately protected the plaintiff's due process rights. Id."). Unlike Desert Truck Sales, Woo has no statutory right to a hearing. Given discretion, a criminal court judge inclined to wrongfully deprive a defendant of property will always deny an evidentiary hearing in order to relieve People of their burden of proof and prevent the defendant from developing favorable evidence, as here. "[A] hearing is generally required before final deprivation of property interests". Zinermon v. Burch, 494 U.S. 113, 132 (1990)(citation omitted). See also Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982)(same).

40.    De facto forfeiture without due process : "[T]he government may not by exercising its power to seize, effect a de facto forfeiture by retaining the property seized indefinitely." Rodriguez-Aguirre, 264 F.3d at 1212 (quotation omitted). "After the criminal proceedings conclude, [] the government has no right to retain the property, absent the commencement of forfeiture proceedings, and its continued retention of the property from that point forward could legitimately be viewed as a deprivation of the defendant's due process rights." Id. at 1213.

41.    Colorado's remedy for return of property violates procedural due process because the state may effect a de facto forfeiture of Woo's seized property with no connection to the case by retaining it indefinitely after trial, based on nothing more than People's one-line arbitrary and unsubstantiated assertion that all property may be needed in the event of a retrial. See Woo, 2025 COA 77 at ¶¶ 36-37, 46. Because Woo is convicted of a class 1 felony (C.R.S. § 18-3-102(3)), there is no time limit for him to theoretically bring successive collateral attacks thereof under C.R.S. § 16-5-402(1) and Colo. Crim. P. 35(c)(3)(VI),(VII); i.e., he cannot ever fully exhaust postconviction remedy even if he so desires. As such, People will perpetually assert that Woo's property may be needed for a speculative new trial even after

appeal of his first 35(c) petition, thus effecting a de facto forfeiture of all denied items that the Court of Appeals affirmed, without ever having to produce evidence establishing a nexus between the numerous items never used at trial and the murder of J.T.

42.    To retain all property in all criminal cases under _Woo_, 2025 COA 77 at ¶37, statewide prosecutors need only assert arbitrarily that all items may be needed because "it's not possible to know with certainty what evidence may be necessary in the event of a retrial". _Id._ at ¶37. This recent holding allows criminal courts to issue a blanket denial of _all_ motions for return of property filed before exhaustion of postconviction remedy through appeal, based on People's one-line response that all items may be needed. This deprives criminal defendants of property with no connection to the crime for many years post-sentence, and, for those with class I felony convictions, in perpetuity. For Woo, this includes numerous property items denied by Judge Evig and erroneously affirmed on appeal that have no possible connection to the murder of J.T., such as 7SF, an iPad used exclusively by Woo's ex-wife that contains only video and images of her playing in the symphony and does not contain a single file relevant to Woo, let alone J.T.

43.    To retain property in the speculative and remote event of retrial, People must establish with _evidence_ a nexus between the property and the murder of J.T. "The burden on the government is heavy because there is a presumption that the person from whom the property was taken has a right to its return." _United States v. Albinson_, 356 F.3d 278, 280(3d Cir. 2004)(citation omitted). "To retain possession ..., the government must demonstrate a specific nexus between the seized property and the continuing criminal investigation." _Interstate Cigar Co. v. United States_, 928 F.2d 221, 224 (7th Cir. 1991). "A district court cannot make a determination regarding the government's legitimate continuing interest in the property without evidentiary support." _Deloge v. State_, 2007 WY 71, ¶26, 156 P.3d 1004 (citing

24

_Albinson_, 356 F.3d at 284) (cited by _Woo_, 2025 COA 77 at ¶¶ 30, 33). "The State's representation to the district court that the need for the property continues, no matter how credible, is simply insufficient to meet the heavy burden placed upon it." _Id._ (citing _Albinson_, 356 F.3d at 284).

II.   The Fifth Prong and application thereof violate substantive due process.

44.   The Fifth Prong violates substantive due process because it allows for the arbitrary and wrongful forfeiture of any _lawful_ property as additional retribution. This rises to the level of government conduct that "shocks the conscience, ... or interferes with rights implicit in the concept of ordered liberty". _United States v. Salerno_, 481 U.S. 739, 746 (1987) (internal quotations omitted). Given Woo's fundamental right against deprivation of property without due process, the strict scrutiny test applies. The application of the Fifth Prong to the forfeiture of Woo's life's work and records with no connection to any crime cannot withstand strict scrutiny because it does not "further[] a compelling state interest", and certainly does not further any interest "by the least restrictive means practically available." _Bernal v. Fainter_, 467 U.S. 216, 226 (1984). The mere exclusion of the non-contraband, lawfully-owned intimate images of J.T. as Woo proposed would be less restrictive than the forfeiture of his entire life's work and records from decades before he even met J.T.

III.   The Fifth Prong and application thereof violate the Freedom of Speech Clause.

45.   The Fifth Prong is unconstitutionally overbroad for the reasons set forth above for Woo's vagueness arguments. It allows for the forfeiture of any material protected by the First Amendment that the criminal court deems "inappropriate" to return, including any lawful sexual material of an adult unrelated to any crime, as here with intimate images of J.T. "The Supreme Court has made clear that the First Amendment protects the rights of individuals to possess sexually explicit materials involving adults, let alone non-explicit

sexually oriented materials." <u>United States v. Kochs</u>, 978 F.3d 719, 724 (10th Cir. 2020). "This right... is fundamental." <u>Id</u>. For the same reason articulated above under Woo's substantive due process claim, the Fifth Prong cannot withstand strict scrutiny.

IV.    <u>The application of the Fifth Prong violates Double Jeopardy.</u>

46.    Since Woo's devices are not <u>per se</u> or derivative contraband subject to any forfeiture statute,[13] the application of the Fifth Prong to their forfeiture would constitute additional punishment in violation of the Double Jeopardy Clause of the Fifth Amendment.

V.    <u>The application of the Fifth Prong violates the Excessive Fines Clause.</u>

47.    "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." <u>Austin v. United States</u>, 509 U.S. 602, 609-10 (1993) (emphasis and internal quotation omitted). A sanction "that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment". <u>Id</u>. at 610 (quoting <u>United States v. Halper</u>, 490 U.S. 435, 448 (1989)). "In light of the historical understanding of forfeiture as punishment" (<u>Id</u>. at 621), the application of the Fifth Prong to the forfeiture of Woo's entire life's innocuous work and records in his devices is a punishment in violation of the Excessive Fines Clause of the Eighth Amendment because it cannot be said solely to serve a remedial purpose, but can only be explained as also serving retributive or deterrent purposes. The state cannot satisfy the "instrumentality test" in the two-step excessiveness inquiry because People cannot show "the existence of a connection between" Woo's devices and J.T.'s murder. <u>United States V. 829 Calle de Madero</u>, 100 F.3d 734, 738 (10th Cir. 1996).

---

[13] Even assuming arguendo that an applicable forfeiture statute exists, any statute of limitations for the state to bring a forfeiture proceeding has long expired. <u>See</u> § 13-80-103.8(1), C.R.S. 2025.

G.  REQUEST FOR RELIEF

(iv) Plaintiff's property may only be forfeited pursuant to applicable forfeiture statute, absent which Defendants Redfield and Roybal must promptly return Plaintiff's electronic devices and all digital files therein; and

(v) Defendant Evig may only deny the return of the remaining non-electronic property items, on the basis that they may be needed in the event of future retrial, if Defendant Redfield produces evidence establishing a connection between the items and the murder of J.T. at an evidentiary hearing.

(B)  A permanent injunction:

(i) forbidding Defendant Redfield from invoking the Fifth Prong for the forfeiture of Plaintiff's property;

(ii) requiring Defendants Redfield and Roybal to promptly return all of Plaintiff's electronic devices and all digital files therein;[14]

(iii) forbidding Defendants Redfield and Roybal from retaining any of Plaintiff's remaining non-electronic property in the event of a future retrial unless they establish with evidence a connection between each item and the murder of J.T. at an evidentiary hearing (and requiring them to promptly return all items otherwise); and

(iv) requiring Defendants Redfield, Roybal, and their staff to treat all property items designated for return with care and promptly facilitate their meaningful return via reliable courier service (to be determined) to Plaintiff's overseas family.

(C)  Costs incurred by Plaintiff in this action, including filing fees and postage.

(D)  Such other equitable and legal relief as the Court may find appropriate and just under the circumstances of this case.

---

[14] Woo continues to welcome the exclusion of all images of J.T., intimate or otherwise, as long as it is agreed that there is no legal basis for their exclusion, and any such procedure is voluntary and to be performed in a timely manner under Woo's supervision to ensure no other file is negligently or maliciously excluded. Woo is unable to trust a party that has attempted to maliciously forfeit his life's work and records to do the right thing. Thus, if Defendants should refuse to accept such condition based on inconvenience or lack of resource, or continue to weaponize such lawful images to deprive Woo of any file unrelated to J.T., then all files must be returned.

And there are real questions, which are impossible to address given the victim's death, as to the extent of permission (if any) regarding those images.

Further, Defendant has no present right to possess sexually explicit items. See Colorado Department of Corrections Regulation No. 300-26.[4] Thus, these requested evidentiary items hold material that it would be inappropriate for the People to return to Defendant or his family and therefore Defendant's request to have those items of evidence returned will be denied.

Following the above analysis and conclusions, the Court will now address the individual items of evidence Defendant has requested to be returned to him.

| Item | Description | Findings and Order |
|---|---|---|
| 10-RSH | iPhone A1428 | Based on their representation that the phone contains screenshots related to flights to Hongkong from Denver, the Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 11-RSH | iPhone A1549 | Based on their representation that the phone was unable to be unlocked prior to Defendant's trial but may be unlocked at a future time and contain evidentiary material, the Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. The Court notes that cellular telephones may contain, among other things, information about locations, communications, and search history.[5] Defendant's request for the return of this item is DENIED. |
| 12-RSH | 3 Great Britain Passports and 1 USA Passport | Based on their representation that information related to these items was used to locate and detain Defendant prior to his arrest, the Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the |

[4] Available at https://drive.google.com/file/d/1TNG9Oqsya5sL4ibxo0MjBXHYSshRMDZ/view) and accessed November 30, 2023.
[5] See Riley v. California, 573 U.S. 373, 394-98 (2014) (noting just some of the various types of information potentially contained in a cellular telephone.

7

| Item | Description | Findings and Order |
|---|---|---|
| 13-RSH | Empty black credit card wallet | event of a future retrial. Defendant's request for the return of this item is DENIED. Request for return of this item is GRANTED. |
| 14-RSH | Receipts from restaurants | Request for return of this item is GRANTED. |
| 15-RSH | 11-1-Piece Blister Packs of Vilitra and 1-1-Piece Blister Pack of Tadalafil | The Court does not find the People's argument that these medications "have potential relevance as the dynamics of power and control are decidedly sexual in this case" demonstrates that this evidence may relevant or necessary in a future trial. The People have failed to meet their burden, and request for return of this item is GRANTED. |
| 16-RSH | Miscellaneous papers | Request for return of this item is GRANTED. |
| 17-RSH | Wallet with Miscellaneous credit cards | Regarding the firearms certification, the Court finds the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. Regarding the two items in the wallet that belonged to individuals other than the Defendant, the request to return those items is DENIED. Regarding the remaining contents in the wallet and the wallet itself, request for the return of those items is GRANTED. |
| 18-RSH | Men's leather belt | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 19-RSH | One sock from Defendant's right foot | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 20-RSH | One sock from Defendant's left foot | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 21-RSH | Men's underwear | The Court finds that the People have demonstrated by a preponderance of the |

8

PLAINTIFF'S EXHIBIT 1

| | | |
|---|---|---|
| | | evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 22-RSH | Men's Diesel brand t-shirt | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 23-RSH | Pair of men's jeans | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 24-RSH | Fluorescent green men's tennis shoes | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 27-RSH | 1 black wallet with misc. cards | The Court finds that the People have demonstrated by a preponderance of the evidence that the Clipper card contained in this item may be needed in the event of a future retrial, and request for return of the Clipper card is DENIED. Regarding the remaining contents in the wallet and the wallet itself, request for the return of those items is GRANTED. |
| 28-RSH | $520.02 in cash | Request for return of this item is GRANTED. |
| 30-RSH | Medication – metoclopramide prescribed to Defendant | Request for return of this item is GRANTED. |
| 33-RSH | Men's black Rinel brand medium size jacket | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 34-RSH | Samsonite suitcase filled with clothing | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 35-RSH | Gas station receipt from front pocket of Samsonite suitcase | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |

| | | |
|---|---|---|
| 36-RSH | Eddie Bauer backpack with clothes, perfume, and other items | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 37-RSH | Miscellaneous papers and receipts | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 38-RSH | Passport card, social security card, and picture from front pocket of 36-RSH | Request for return of this item is GRANTED. |
| 39-RSH | Cables and SDD drive from pocket of 36-RSH | The People object to the release of this item but have provided no basis for their objection. As such, they have failed to meet their burden to demonstrate that the item should not be returned to Defendant, and the request for return of this item is GRANTED. |
| 40-RSH | AT&T Sim Card and Kingston 4GB thumb drive from 36-RSH | The People object to the release of this item but have provided no basis for their objection. As such, they have failed to meet their burden to demonstrate that the item should not be returned to Defendant, and the request for return of this item is GRANTED. |
| 41-RSH | Jewelry from 36-RSH | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 42-RSH | 9 keys on a key ring from 36-RSH | Request for return of this item is GRANTED. |
| 43-RSH | Check book, checks, and two $2 bills from 36-RSH | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 44-RSH | Receipt from pocket of 36-RSH | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 46-RSH | Amazon Tablet SV98LN from 36-RSH | The People object to the release of this item but have provided no basis for their |

| | | Defendant or his family, Defendant's request for return of this item is DENIED. |
|---|---|---|
| 7SF | Apple iPad model A1458 | Based on their representation that the device was unable to be accessed prior to Defendant's trial, but may be able to be accessed at a future time and contain evidentiary material, the Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 10SF | Miscellaneous paperwork including bank statements, copies of checks, letters from 1999 | Request for return of this item is GRANTED. |
| 11SF | Computer tower AVA-400313 | The People object to the release of this item but have provided no basis for their objection. As such, they have failed to meet their burden to demonstrate that the item should not be returned to Defendant, and the request for return of this item is GRANTED. |
| 13SF | Manila envelope with paperwork including court documents, bank statements, student history | Request for return of this item is GRANTED. |
| 14SF | Papers from 13SF recovered from copier due to paper jam | Based on their representation that these items are copies of the items contained in 13SF which were made by EPSO, the Court finds Defendant does not own these items and therefore his request for the release of these items to him or his family is DENIED. |
| 60-RSH | California Vehicle registration for James Woo | Request for return of this item is GRANTED. |
| 61-RSH | Memorex CD with no label found in White Honda | Request for return of this item is GRANTED. |
| 64-RSH | Sony Digital Recorder | The People object to the release of this item but have provided no basis for their objection. As such, they have failed to meet their burden to demonstrate that the item should not be returned to Defendant, and the |

[6] The Court notes that tablet devices, such as i-pads, work much like cellular telephones and thus hold the same information that a cellular telephone may hold and may, if so equipped, access cellular networks. Thus, there is no principled reason to treat them differently from cellular telephones and the court notes the types of information they may hold as explained in footnote 5.

12

| | | objection. As such, they have failed to meet their burden to demonstrate that the item should not be returned to Defendant, and the request for return of this item is GRANTED. |
|---|---|---|
| 47-RSH | Western Digital 1TB Black hard drive from pocket of 36-RSH | The Court finds that, on the basis that this item contains graphic images, based on the underlying facts of this case and the nature of the requested property, it would be inappropriate to return this item to Defendant or his family. Defendant's request for return of this item is DENIED. |
| 48-RSH | Seagate 5TB external drive from pocket of 36-RSH | The Court finds that, on the basis that this item contains graphic images, based on the underlying facts of this case and the nature of the requested property, it would be inappropriate to return this item to Defendant or his family. Defendant's request for return of this item is DENIED. |
| 49-RSH | Iomega external hard drive enclosing Seagate 1 TB hard drive from pocket of 36-RSH | The Court finds that, on the basis that this item contains graphic images, based on the underlying facts of this case and the nature of the requested property, it would be inappropriate to return this item to Defendant or his family. Defendant's request for return of this item is DENIED. |
| 50-RSH | Western Digital "My Passport" Ultra 2TB external hard drive from pocket of 36-RSH | The Court finds that, on the basis that this item contains graphic images, based on the underlying facts of this case and the nature of the requested property, it would be inappropriate to return this item to Defendant or his family. Defendant's request for return of this item is DENIED. |
| 51-RSH | Toshiba 1 Tb external hard drive from pocket 5 of item 36-RSH | The Court finds that, on the basis that this item contains graphic images, based on the underlying facts of this case and the nature of the requested property, it would be inappropriate to return this item to Defendant or his family. Defendant's request for return of this item is DENIED. |
| 52-RSH | Canon Vixia HF10 digital camcorder from pocket 5 of item 36-RSH | The Court finds that, on the basis that this item contains graphic images, based on the underlying facts of this case and the nature of the requested property, it would be inappropriate to return this item to |

11

| | | |
|---|---|---|
| 65-RSH | Electronic recording of hearing 2/14/08 California | Request for return of this item is GRANTED. |
| 66-RSH | Western Digital 250GB hard drive in box | Based on their representation that the device was unable to be accessed prior to Defendant's trial, but may be able to be accessed at a future time and contain evidentiary material, the Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 67-RSH | Business card | Request for return of this item is GRANTED. |
| 69-RSH | Bag with medication and receipt from Walgreens dated 9/2/15 | Request for return of this item is GRANTED. |
| 70-RSH | Bag with medication | Request for return of this item is GRANTED. |
| 72-RSH | Western Digital My Passport external drive P/N: WDBY8L0020BBK-01 | Based on their representation that the device was unable to be accessed prior to Defendant's trial, but may be able to be accessed at a future time and contain evidentiary material, the Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 73-RSH | 1 Black Dell 128MB thumb drive and 1 Samsung 2GB SD card and 1 Transcend 2GB SD card | The Court finds that, on the basis that this item contains graphic images, based on the underlying facts of this case and the nature of the requested property, it would be inappropriate to return this item to Defendant or his family. Defendant's request for return of this item is DENIED. |
| 74-RSH | 1 Home Depot receipt for two boxes of baking soda purchased 12/22/15 | The Court finds that the People have demonstrated by a preponderance of the evidence that this item may be needed in the event of a future retrial. Defendant's request for the return of this item is DENIED. |
| 75-RSH | Douglas County traffic ticket issued 9/6/15 | Request for return of this item is GRANTED. |
| 77-RSH | 4-page job application | Request for return of this item is GRANTED. |

For those items where the Court granted Defendant's requests, the prosecution shall release the items to Defendant's designee within twenty-one (21) days of receiving Defendant's pleadings naming the person or persons who will receive the items.

At this point, the Court finds holding a contested hearing serves no purpose. Both sides adequately presented their arguments for or against release of particular items. And there is no real dispute about releasing some of the items after Defendant chose to waive his right of retention under C.R.S. 18-1-1006. For items where the Court denied Defendant's request, the Court does so without prejudice. After all, the circumstances here may change depending on the ultimate resolution of Defendant's claims pursuant to Crim. P. Rule 35(c) and the potential appeal of that decision. But for now, the Court declines to set a contested hearing on these issues.

SO ORDERED this 22nd Day of December 2023.

Samuel A. Evig
District Court Judge